IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIL RIZVI, M.D., <br>         Plaintiff, <br><br> v. <br><br> PETER KOVACH, *et al.*, <br>         Defendants. | CIVIL ACTION <br><br><br><br> NO. 20-3269 |

### MEMORANDUM OPINION

Plaintiff Hil Rizvi, M.D., acting *pro se*, brings suit against several state and federal officials seeking, *inter alia*, the restoration of his Pennsylvania medical license. Before the Court are various motions to dismiss which, for the following reasons, shall be granted.

### I.   BACKGROUND

For over twenty years, Plaintiff, a physician, held a license to practice medicine in Pennsylvania. He applied for a license to practice medicine in Maine, which was preliminarily denied in early 2014. Plaintiff appealed. On October 14, 2014, the Maine Board of Licensure in Medicine ("Maine Board") held a hearing on Plaintiff's application at which Plaintiff was represented by counsel. The Maine Board issued an order denying Plaintiff's application the following month, finding that Plaintiff made various misrepresentations on his application; engaged in unprofessional conduct when interacting with the Maine Board's Executive Director; and failed to notify the Board of an October 2013 arrest, a March 2014 indictment, and a March 2014 arrest. Plaintiff did not appeal the Maine Board's decision.

In June 2016, the State Medical Board of Ohio ("Ohio Board") issued an order permanently revoking Plaintiff's Ohio medical license, based upon the Maine Board's denial of Plaintiff's license application and a finding that Plaintiff made false statements to the Ohio Board

in his 2014 license application.  Plaintiff did not request a hearing before the Ohio Board, nor did he appeal its decision.

On August 18, 2016, the Pennsylvania Bureau of Professional and Occupational Affairs issued a two-count Order to Show Cause asserting that Plaintiff was subject to disciplinary action by the Pennsylvania State Board of Medicine ("Pennsylvania Board") under the reciprocal disciplinary provisions of Section 41(4) of the Medical Practice Act of 1985, as a result of the disciplinary actions taken by the Maine and Ohio Boards.  Section 41(4) provides:

> The Board shall have the authority to impose disciplinary or corrective measures on a board-regulated practitioner for . . . [h]aving a license or other authorization to practice the profession revoked or suspended or having other disciplinary action taken, or an application for a license or other authorization refused, revoked or suspended by a proper licensing authority of another state.

63 P.S. § 422.41.

A formal hearing was conducted before a Board Hearing Examiner in January 2018, at which Plaintiff was represented by counsel.  The Board's Chief Hearing Officer then issued an Adjudication and Order recommending that Plaintiff's Pennsylvania medical license be indefinitely suspended.  On September 12, 2018, the Board issued a Final Memorandum Order revoking Plaintiff's medical license for five years.  Plaintiff appealed to the Commonwealth Court of Pennsylvania, which affirmed.  He filed an application for allowance of appeal with the Pennsylvania Supreme Court, which was denied.

Plaintiff filed this *pro se* action in May 2020, seeking monetary damages as well as declaratory and injunctive relief in connection with the revocation of his Pennsylvania medical license.  Shortly thereafter, the U.S. Drug Enforcement Administration ("DEA") issued Plaintiff an Order to Show Cause proposing the revocation of his DEA certificate of registration in Pennsylvania, to which Plaintiff responded by email.  The DEA considered his response and, on

November 9, 2020, issued a final decision and order revoking Plaintiff's Pennsylvania DEA registration (the "DEA Order").  Plaintiff filed for injunctive relief in this Court, requesting, *inter alia*, that the DEA Order be enjoined and his Pennsylvania medical license be restored.  These motions were denied without prejudice due to insufficient service of process.

Plaintiff filed a Third Amended Complaint (the "Complaint") on December 23, 2020. The Complaint names twelve individual defendants: Peter Kovach and Suzanne Zerbe, who are associated with the Pennsylvania Board ("Pennsylvania Defendants"); Chantel Scott, who is associated with the Ohio Board ("Ohio Defendant"); Dennis Smith, who is currently the Executive Director of the Maine Board ("Maine Defendant"); Penny Taylor, Sherri Phillips, Daniel Potenza, and Laura Lombardi, each of whom is or was associated with the New Hampshire Board of Medicine ("New Hampshire Defendants"); and Robert Walker, Timothy Shea, William McDermott, and Andria Harris, each of whom is or was associated with the DEA ("DEA Defendants").

The Complaint alleges that the Pennsylvania Board relied on "subjective standards and personalized opinions rather than objective measures" in revoking Plaintiff's medical license. Plaintiff suggests that these subjective standards had their origin in the Maine proceedings, during which the Maine Defendant, Dennis Smith, allegedly "made subjective assertions" that were then "disseminated to accomplices in Ohio Pennsylvania New Hampshire and federal employees at the Drug Enforcement Agency."  He alleges that "Commonwealth employees sabotaged the proceedings of the [Pennsylvania Commonwealth Court] and the state Supreme Court with deliberate judicial fraud by accusing Plaintiff [of having] a criminal arrest record," and that the "defendants are actively engaged in encircling [him] with escalated local retaliation."  Based on these allegations, Plaintiff asserts three causes of action: (1) a Section

3

1983 claim, 42 U.S.C. § 1983, alleging that Plaintiff has been denied due process guaranteed by the Fourteenth Amendment to the U.S. Constitution; (2) a claim purporting to refer Defendants to an unidentified U.S. Attorney for prosecution pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"); and, (3) a claim purporting to refer Defendants to an unidentified U.S. Attorney for prosecution pursuant to the Administrative Procedures Act ("APA").

After filing the Complaint, Plaintiff renewed his request for injunctive relief. A preliminary injunction hearing was held on February 8 and February 25, 2021. The Pennsylvania, Ohio, New Hampshire, and Maine Defendants each filed Motions to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). The Ohio, New Hampshire and Maine Defendants also filed under Federal Rule of Civil Procedure 12(b)(2). Plaintiff has failed to respond to any of the motions.[1]

## II. LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). All factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

---

[1] The DEA Defendants have not responded to Plaintiff's Complaint because they have not yet been served in a manner consistent with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4(i)(2) ("To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee."); Fed. R. Civ. P. 4(i)(3) ("To serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g).").

A motion under Rule 12(b)(2), on the other hand, "is inherently a matter which requires resolution of factual issues outside the pleadings, *i.e.*, whether in personam jurisdiction actually lies." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). When a defendant files a motion to dismiss pursuant to Rule 12(b)(2), the burden of demonstrating the facts that establish personal jurisdiction falls on the plaintiff, and "[w]hile the Court can accept plaintiff's allegation of jurisdiction as true for the purposes of a motion to dismiss, 'once a defendant has raised a jurisdictional defense, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction.'" *Gutierrez v. N. Am. Cerruti Corp.*, 2014 WL 6969579, at *2 (E.D. Pa. Dec. 9, 2014) (internal quotation marks and citation omitted) (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 147 (3d Cir. 1992)).

### III. DISCUSSION

Defendants raise a variety of challenges to Plaintiff's Complaint. Most need not be addressed, however, because there is no personal jurisdiction over the out-of-state Defendants and Plaintiff fails to state a claim as to the Pennsylvania Defendants.

#### A. Personal Jurisdiction

The Ohio, New Hampshire, and Maine Defendants contend that this action should be dismissed for lack of personal jurisdiction. The Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over a nonresident defendant unless that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Telcordia Tech. Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When the defendant has made such minimum contacts with the forum state, the court may exercise specific personal jurisdiction over that defendant for claims arising out of those contacts. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 149 (3d Cir. 1992). Specific personal jurisdiction exists where the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), such that the defendant may "reasonably anticipate being haled into court" in the state, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). If the defendant lacks suit-related contacts with the forum state, the court may exercise general personal jurisdiction where the defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (alteration in original) (internal quotation marks and citations omitted).

The Complaint does not establish general jurisdiction over the out-of-state Defendants, as there is no indication that any of these Defendants are "essentially at home" in Pennsylvania. *See id.* Nor does it establish specific jurisdiction. As to the New Hampshire and Ohio Defendants—Taylor, Phillips, Potenza, Lombardi, and Scott—the Complaint contains no specific allegations concerning these individuals, and Plaintiff does not allege that they made any contacts with Pennsylvania. Rather, liberally construed, the Complaint alleges only that the Maine Defendant, Smith, made "subjective assertions" which were "disseminated to accomplices" in Ohio and New Hampshire. There is no allegation that the New Hampshire and Ohio Defendants "purposely avail[ed]" themselves of the Pennsylvania forum. *See Hanson*, 357 U.S. at 253.

As to the Maine Defendant, Plaintiff appears to allege that the "subjective" statements made by Smith during Plaintiff's Maine Board hearing served as the "original source" of the

reciprocal actions in Ohio, New Hampshire, and Pennsylvania.  He alleges that the Maine Board's denial of his medical license application was "reported [to] the National Practitioner Data Bank and disbursed as hearsay" to all Defendants.  The Complaint does not contain any specific allegations as to any contacts between Smith and Pennsylvania, nor has Plaintiff responded to Defendants' jurisdictional challenge with any facts suggesting that Smith has directed any suit-related conduct at Pennsylvania.  *See Carteret*, 954 F.2d at 146.  Thus, there is no indication that Smith could have reasonably anticipated being sued by Plaintiff in Pennsylvania.  *See World-Wide Volkswagen*, 444 U.S. at 297.

Because there is no personal jurisdiction over the Ohio, New Hampshire, and Maine Defendants, Plaintiff's claims against these Defendants will be dismissed with prejudice.[2]  *See Danziger v. De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132-33 (3d Cir. 2020).

### B. Failure to State a Claim

The Pennsylvania Defendants do not challenge this Court's jurisdiction, but do contend that Plaintiff fails to state a claim against them.

Although Plaintiff's allegations are not always clear, the gravamen of his suit is that his Pennsylvania medical license was revoked without due process of law.  He contends that his license revocation is actionable under Section 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

---

[2] Although Plaintiff has not sought leave to amend his Complaint, the Court nevertheless finds that such amendment would be futile.  *See Tate v. Morris Cty. Prosecutors Office*, 284 F. App'x 877, 879 (3d Cir. 2008) (a district court must grant leave to amend "even if the plaintiff does not request it, unless amendment would be futile or leave to amend is not warranted for some other reason").  Plaintiff has already submitted three amended complaints, none of which contains allegations sufficient to establish personal jurisdiction over the out-of-state Defendants.  Further, none of the numerous documents Plaintiff has submitted in support of his case indicate that there has been any suit-related contact between these Defendants and Pennsylvania.

at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Initially, to the extent Plaintiff asserts this claim against the Pennsylvania Defendants in their individual capacities, his Complaint must contain allegations that the Pennsylvania Defendants either personally participated in, directed, or knowingly acquiesced to the alleged constitutional violation.  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Whittington v. Vaughn*, 289 F. Supp.2d 621, 628 (E.D. Pa. 2003) ("For acts allegedly taken in their individual capacity, 'defendant[s] in a civil rights action must have personal involvement to be liable.'" (internal quotation marks omitted) (quoting *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir. 2003))).  Plaintiff does not allege any facts demonstrating that the Pennsylvania Defendants were personally involved in revoking Plaintiff's Pennsylvania medical license.

Plaintiff fails, moreover, to state a cognizable due process claim.  "To state a due process claim, [a party] must establish (1) that it was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, and property, and (2) that the procedures available to it did not provide due process of law."  *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013).

There is no dispute that Plaintiff had a property interest in his Pennsylvania medical license.  *See Shah v. State Bd. of Med.*, 589 A.2d 783, 789 (Pa. Commw. 1991) ("Once obtained, a physician has a property interest in his or her medical license.").  But to the extent Plaintiff challenges the established procedures governing the revocation of his Pennsylvania medical license, he fails to explain how these procedures were constitutionally inadequate.  "The essential requirements of due process . . . are notice and an opportunity to respond."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  Here, Plaintiff was given notice with a two-count Order to Show Cause alleging that he was subject to disciplinary action by the Pennsylvania Board and a formal hearing was conducted before a Board Hearing Examiner, at

8

which Plaintiff was represented by counsel and presented evidence.[3] *See Gilson v. Pa. State Police*, 676 F. App'x 130, 135 (3d Cir. 2017) (explaining, in the employment termination context, that due process requires notice of the allegations against the employee, an explanation of the evidence, and an opportunity for the employee to present his or her side of the story).

Plaintiff also had the opportunity to appeal the Pennsylvania Board's decision to the Pennsylvania Commonwealth Court. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."). Although Plaintiff suggests in his Complaint that he should have been afforded "a live civil hearing before live judges or jury" rather than an administrative hearing, such a procedure is not necessary to satisfy the requirements of due process. *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483 (1982) ("[N]o single model of procedural fairness, let alone a particular form of procedure, is dictated by the Due Process Clause."). Plaintiff's Complaint fails to state a due process violation, and his claims as to the Pennsylvania Defendants will therefore be dismissed.

An appropriate order follows.[4]

---

[3] Plaintiff's Complaint points repeatedly to President Judge Mary Hannah Leavitt's concurrence in *Rizvi v. Bureau of Professional and Occupational Affairs, State Board of Medicine*, 2020 WL 2095951 (Pa. Commw. May 1, 2020), alleging that President Judge Leavitt's opinion "highlight[s] the constitutional wrong perpetrated on the Plaintiff." President Judge Leavitt wrote separately in Plaintiff's case to express her concern that Section 41(4), the statutory provision pursuant to which Plaintiff's Pennsylvania medical license was revoked, may violate Article II, Section I of the Pennsylvania Constitution, which provides that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Republicans." Pa. Const. art. II, § 1. Specifically, President Judge Leavitt noted that Section 41(4) may not provide "adequate criteria to guide and restrain the exercise of delegated authority." *Rizvi*, 2020 WL 2095951, at *6 (Leavitt, P.J., concurring) (quoting *Protz v. Workers' Compensation Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 838 (Pa. 2017)). This issue of state constitutional law is not before the Court.

[4] Accordingly, Plaintiff fails to establish a likelihood of success on the merits of his claims and his request for injunctive relief will be denied. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of N.J.*, 910 F.3d 106, 115 (3d Cir. 2018) ("A plaintiff's failure to establish a likelihood of success on the merits 'necessarily result[s] in the denial of a preliminary injunction.'" (alteration in

**March 11, 2021**                                    **BY THE COURT:**

                                                      **/s/Wendy Beetlestone, J.**

                                                      _____
                                                      **WENDY BEETLESTONE, J.**

---

original) (quoting *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012))).